### No. 21,015.

J. C. FISHER et al., as The Board of Rural High School District No. 1, in Stafford County, *Plaintiffs*, v. ANNA M. BECK, as County Superintendent, etc., et al., *Defendants*.

#### SYLLABUS BY THE COURT.

RURAL HIGH SCHOOL—*Not Within Operation of Barnes High School Law.* Rural high-school districts created under chapter 311 of the Laws of 1915 are not within the operation of the Barnes high-school law and are not entitled to share in the fund derived from a levy made under the Barnes law.

Original proceeding in mandamus. Opinion filed November 11, 1916. Writ denied.

*Ray H. Beals*, of Saint John, and *Herbert J. Beals*, of Topeka, for the plaintiffs.

*Robert Garvin*, of Saint John, for the defendants.

*S. M. Brewster*, attorney-general, as *amicus curiæ; John L. Hunt*, assistant attorney-general, of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.: Is rural high school district No. 1 of Stafford county within the operation of chapter 397 of the Laws of 1905 and the amendments thereto, known as the Barnes high-school law, and entitled to share in the benefits of that law?

For several years before June 24, 1915, school district No. 40, an ordinary school district, had been in existence and in-

cluded within its boundaries thirteen sections of land in Stafford county. For some time it had maintained a high school in compliance with the requirements of the Barnes law, and had participated in the funds raised under that law. After chapter 311 of the Laws of 1915, known as the rural high-school law, was enacted, and in pursuance of an election held on June 24, 1915, rural high-school district No. 1 of Stafford county was organized, and it comprises forty-five sections of land, thirty-nine and a half of which are in Stafford county and five and a half of them in Pratt county. The thirteen sections which formed school district No. 40 are included in the bounds of rural high school district No. 1. At the end of the school year 1916, the principal of the rural high school made a report to the county superintendent as to the condition of the school and the work which had been done there. This report was accepted and approved by the county superintendent, and she thereupon certified that the plaintiff district and three others had maintained high schools with courses of instruction which entitled the pupils who complied with them to entrance to the freshman class of the State University, and that they measured up to the requirements of the Barnes law in that respect. At the same time she certified to the board of county commissioners an amount necessary for the maintenance of three high schools in Stafford county, but omitted rural high school No. 1 from the list upon the theory that it was not within the application of the Barnes law and was not entitled to its benefits. Accordingly the county commissioners declined to make a levy under the Barnes law for the support of the plaintiff. This proceeding was brought to compel these officers to provide for the maintenance of the plaintiff under the Barnes law, and the only question presented here is whether the plaintiff comes within the purpose and scope of that law.

The plaintiff was created in the manner provided by the rural law, is a distinct entity, and not in a class with ordinary school districts. If the electors in a prescribed territory vote to establish a rural high school, a school board is elected for the government of the schools, which has power to secure sites by donation, purchase or condemnation. The annual meeting of such organization is held on the day preceding the day on

which school districts hold their meetings, and at such meeting a levy is to be made not exceeding four mills on the dollar of valuation upon all the taxable property in the district to pay teachers and the incidental expenses of the rural high school, and to create sinking funds to meet its obligations. The levy, when made, is certified to the county clerk, who directly extends it upon the tax roll and the treasurer is authorized to collect and pay over the taxes as is provided in the case of school districts. Any pupil in the district, who has completed the prescribed course for district schools, is eligible for admission to the high school, and the rural high-school board may, with the approval of the county superintendent, provide for teaching any branches in the course of study for elementary district schools. The tuition in the high school is to be free to all pupils residing in the high-school district, and, while nonresident pupils may be admitted on the payment of fees to be fixed by the board, they can never be admitted to the exclusion of a resident pupil. Adjacent territory may be added to the high school district, and thereafter such attached territory shall bear its full proportion of all expenses of the rural high school. The act under which the plaintiff and other rural high schools were organized was obviously intended as a substitute for township high schools. Previously the legislature had authorized the establishment of county high schools in the manner provided in section 7765 and the sections immediately following of the General Statutes of 1909. Later the Barnes law was enacted under the statute mentioned, and still later by chapter 262 of the Laws of 1911 it provided for township high schools. The rural law was house bill No. 36, and was presented as an amendment of the township high-school law. Its terms indicated that it was not within the operation of the Barnes law, and the title of the original bill declared that the high schools formed under it should be exempt from the operation of the Barnes law. The bill was modified and elaborated somewhat, but after providing for the establishment of rural high schools, it repeals the two acts under which township high schools were maintained. It is clear, therefore, that it was intended as a substitute for the township high-school law, and was changed so that the organization should not be confined to a single township, but might include the

territory of several townships or parts of townships in one or more counties.

There are a number of differences between such districts and ordinary school districts to which the Barnes law is made applicable. After forming an organization of its own, as the rural law prescribes, it is provided that it shall hold annual meetings on a day other than the one on which annual meetings of school districts are held. The rural school board makes a levy of taxes on a fixed limit, which the county clerk is required to enter on the tax roll, while school districts do no more than to certify the amounts required for school purposes and the duty of making the levy is vested in the county commissioners. The tax is levied on all the property within the high school district for the maintenance of the schools, while for high schools maintained under the Barnes law it is levied on all the property within the county. If it had been the intention of the legislature to maintain rural high schools from the funds raised under the Barnes act, a levy on the property of the district for the same purpose was unnecessary. A rural high school district may be constituted of territory from more than one county. In such a case a levy may be made upon all the property within the district and the money derived from it expended for the benefit of the whole district, while under the Barnes law the fund raised is a county fund and can not be expended for the benefit of the people of a district outside of the county in which the fund is raised. Provision is made for ordinary joint school districts (Laws 1911, ch. 272), but none is made for a rural high school district comprising territory in more than one county, one of which may be or may not be operating under the Barnes law. The tuition is to be free to all pupils resident in the rural high school district comprising the territory in two or more counties, but under the Barnes law a pupil outside of the county raising the fund could not participate in its benefits. The provisions as to the course of study under the two laws do not coincide. Under the Rural law the course of study shall be such as the rural high school board shall prescribe, with such modifications as the state board of education may deem to be necessary to promote the usefulness and efficiency of such schools (Laws 1915, ch. 311, § 9), while under the Barnes law two courses of

study are provided, both of which require four years work, namely—

"A college preparatory course, which shall fully prepare those who complete it to enter the freshman class of the college of liberal arts and sciences of the University of Kansas, and a general course, designed for those who do not intend to continue school work beyond the high school." (Gen. Stat. 1909, § 7799.)

The length of the course required under the Rural law is not prescribed. It may be one or more years as the rural board may determine and it is not required that those who take it shall be up to the standard which will admit them to the freshman class of the University of Kansas. Under the Rural law provisions may be made and money expended for teaching any branch belonging to the course of study in elementary district schools, while under the Barnes law it is provided that "no part of said general high-school fund shall ever be used for other than high-school purposes." (Gen. Stat. 1909, § 7794.)

School district No. 40, whose territory was included in the rural high school district, abandoned its high school and its rights to share in the benefits of the Barnes law when the people of the district united in forming the new organization under the Rural law. It has no right to participate in the funds provided under the Barnes law unless it maintains a high school. This it has not done, and the fact that some of the pupils formerly attending high school are now in attendance at the rural high school does not change the rights of the latter under the law nor make it subject to the Barnes law. The features mentioned—and there are still others that might be pointed out—show that the legislature did not intend that rural high schools should be brought within the operation of the Barnes law nor participate in the fund provided under it.

The writ of mandamus asked for will therefore be denied.

DAWSON, J., dissenting.