No. 28,725.

J. M. WOODSON et al., *Appellants*, v. SCHOOL DISTRICT No. 28 IN KINGMAN COUNTY et al., *Appellees.*

(274 Pac. 728.)

Opinion filed February 9, 1929.

*H. E. Walter,* of Kingman, *A. C. Malloy, Roy C. Davis* and *Warren H. White,* all of Hutchinson, for the appellants.

*Clark A. Wallace* and *Paul R. Wunsch,* both of Kingman, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action by resident taxpayers to enjoin a common school district and its officers from constructing an addition to the school building and issuing bonds in payment therefor. The trial court made findings of fact and rendered judgment for defendants. Plaintiffs have appealed.

School district No. 28 in Kingman county was organized many years ago and has continued to exist under our laws relating to common schools. Its school building is situated in the unincorporated village of Penalosa. About 1911 the school board added courses of study to include two years of what is commonly called high-school work, and in 1924 began maintaining a four-year high-school·course. This course, and the instruction given under it, was later approved by the high-school supervisors under the state board of education and the school became a duly accredited high school. In 1926 the members of the school board, acting in their individual capacity, urged by the patrons of the district to provide a community center, conceived the idea of erecting a building for that purpose in the form of a gymnasium on lots to be donated to the school district situated across the street from the school building. They caused a petition to be circulated within the district and called a bond election for the purpose of voting $8,000 of the bonds of the school district for the construction of such a building. The proposition received a majority of votes cast at an election held May 10, 1927. Soon thereafter resident taxpayers of the district brought a suit to enjoin the issuing of the bonds and the construction of such building. A temporary injunction was issued. Defendants then consulted counsel and, having concluded that their proceedings were not in conformity to the statute, made no further defense in that case. No issue involved in that case is before this court. We are informed that final judgment went for plaintiffs, the costs have been paid, and that there has been no appeal. A statement of it is made simply as a part of the history of transactions leading .up to the issues in the case before us.

While the first action was pending a second petition was circulated within the school district asking the school board to call an election for the purpose of voting $8,000 of the bonds of the district for the purpose of building an addition to the school building, and at an election held July 8, 1927, the proposition received a majority of the votes cast. Soon thereafter a second injunction action was filed by resident taxpayers to enjoin the issuance of the bonds and the construction of the proposed addition to the school building, and a restraining order was issued. Defendants moved to vacate this order, but .this was not pressed for consideration, and on February 9, 1928, there was a partial hearing of the case upon its merits. This hearing disclosed that no action had been taken at any school meet-

ing authorizing the building of an addition to the school building, or the voting of bonds, and the restraining order previously issued was continued in force as a temporary injunction pending the final determination of the case.

At the annual school meeting held in the school district in April, 1928, it was determined by the vote of those present that additional school room was desired. A tentative plan for an addition to the school building was presented, explained and discussed; the estimated cost was given as being $11,400, exclusive of flues, plumbing, heating, painting and equipment; the plans were accepted by the vote at the school meeting, it was also voted that the new building be built of tile, and the school board was instructed to call an election to vote $12,000 in bonds of the district to build and equip the building in accordance with the plans. Soon after this meeting a third petition was circulated within the district and presented to the school board requesting it to call an election for the purpose of voting $12,000 of bonds of the district for the purpose of building an addition to the school building, and on May 22, 1928, an election was had at which the proposition carried. The bonds were actually issued June 1, 1928, and sold to the Guaranty Title and Trust Company of Wichita on June 29.

On June 9, 1928, plaintiffs, in the second injunction suit filed and previously mentioned, by leave of court filed an amended and supplemental petition setting up the action respecting the election on the $12,000 bonds, alleged the action was illegal in specific respects, and sought to enjoin the issue and sale of the $12,000 in bonds and the construction of the building provided for by the action of the school meeting and subsequently. Defendants filed an answer to this amended and supplemental petition.

On July 26, 1928, the defendant school board entered into a contract with one R. P. Van Riker to build the addition to the school building in accordance with the plans approved at the annual meeting and the proceedings then and subsequently taken.

On July 31, 1928, plaintiffs brought a third injunction suit. In this they sought to enjoin defendants from issuing or selling the $12,000 worth of bonds, or the letting or carrying out of a contract for the building of an addition to the school building provided for at the annual meeting and subsequent proceedings. Issues were joined in that action.

The second injunction suit, on the issues joined on the amended

and supplemental petition, and the third injunction suit, came on for trial on the merits and by agreement of counsel were heard together, and the findings of fact and conclusions of law and judgment of the court were made to apply to both cases. The judgment of the court below was in favor of defendants in both actions.

The notice of appeal gives the caption and number of the third injunction suit only, and defendants make the point that there has been no appeal in the second injunction suit. The point is rather a narrow one and we deem it not to be well taken. While there was not a formal order of consolidation, the cases were heard and tried as one case, and in fact, as the issues were then framed, they presented substantially the same questions. The same findings of fact, conclusions of law and journal entry of judgment applied to both cases, and we deem it in accordance with justice to treat the cases as having been consolidated in fact, and that the notice of appeal is applicable to both cases.

Let us now take up the legal questions argued by appellants. They argue first that a common school district in Kansas cannot issue bonds for high-school purposes, or for constructing high-school facilities by subterfuge, or otherwise, nor does statutory authority exist for the issuance of bonds by common school districts for the purpose of building a gymnasium or opera house. In this connection the court found, among other things, that the school district has a substantial four-room school building, well furnished and equipped, and that the building would be sufficient for the needs of the school district if it did not provide a high-school course for its pupils. The court further found that there was practically no change in the design or purpose of the building from that which was first contemplated by the school board, and that the last-mentioned building, while voted and designated as an addition to the school building, was designed to be built as a gymnasium for the purpose of holding dramatic and athletic exhibitions and other activities, and being particularly designed therefor, and also for the purpose of classrooms, or additional rooms for use in connection with the old building as the needs of the school might require. The statute provides (R. S. 72-302) that a school district shall be a body corporate, and shall possess the usual powers of a corporation for public purposes. This means, in a classification of corporate bodies, that a school district is what is known as a quasi corporation, as distinct from a corporation proper. (*Beach v. Leahy,* 11 Kan. 23.)

With respect to such quasi corporations it has been repeatedly held that the power to issue bonds exists only when expressly conferred by statute or necessarily implied. (*State v. Kansas City*, 60 Kan. 518, 525, 57 Pac. 118; *State, ex rel., v. Board of Trustees*, 114 Kan. 485, 219 Pac. 283; *Kaw Valley Drainage Dist. v. Kansas City*, 119 Kan. 368, 239 Pac. 760.) These propositions may be considered as being well established, as plaintiffs contend.

Appellants argue that the common school district has no authority in law to furnish instruction in high-school subjects, or to conduct a high school, and our attention is called to the unreported decision in the case of *Morton Salt Co. v. School District 136, Reno County*, being a decision of the federal court for the district of Kansas, in which the learned judge stated, among other things:

"I have sought in vain for any statutory power conferred upon a school district, such as is district No. 136, to provide itself with a building to be employed for high-school purposes of any kind, or to enable the district to conduct and maintain a high school."

We are inclined to think that the search of the learned judge and counsel who aided him was not thorough. The statute (R. S. 72-1101) provides:

"That in each and every school district shall be taught orthography, reading, writing, English grammar, geography, arithmetic, history of the United States, and history of the state of Kansas, and such other branches as may be determined by the state board of education: *Provided,* That the instruction given shall be in the English language."

Prior to the revision of this section in 1923 the statute designated specifically subjects to be taught, "and such other branches as may be determined by the district board." There was no statutory restriction on the school board, and there is none now on the state board of education, as to what branches, other than those named in the statute, shall be taught in the common school. From this it necessarily follows that if the school board, prior to 1923, and the state board of education since that date, determined that high-school branches be taught in a school conducted under the law relating to common schools, it was perfectly lawful that such subjects be taught. The fact that common schools have authority to give instruction in branches commonly spoken of as high-school studies, or to conduct a high school, has been recognized in many of the sections of our statutes relating to schools (R. S. 72-316; 72-1027; 72-3001; 72-3003; 72-3008; Laws 1925, ch. 235, § 2; Laws 1927, ch. 277), and has

also been repeatedly recognized in decisions of this court. (*Board of Education v. Welch*, 51 Kan. 792, 33 Pac. 654; *Board of Education v. Dick*, 70 Kan. 434, 78 Pac. 812; *Fisher v. Beck*, 99 Kan. 180, 184, 160 Pac. 1012; *Wright v. Board of Education*, 106 Kan. 469, 188 Pac. 439; *State, ex rel., v. School District*, 112 Kan. 66, 209 Pac. 665; *Jackson v. Joint Consolidated School District*, 123 Kan. 325, 327, 255 Pac. 87.)

Therefore, the point sought to be made by appellants that the defendant school district had no authority in law to maintain a high-school course of study must be held to be without merit. It necessarily follows that when the district has authority to provide a course of study including high-school branches it has authority to construct a school building necessary or proper for such school. (R. S. 72-1023, 72-2001.)

Appellants argue that the building being constructed, however, is for a gymnasium or opera house and not for school purposes. This designation of the proposed addition to the building as an opera house seems to be a thought which occurred to appellants since the trial in the court below. We find no mention of that term in the record. The finding of the court did not justify the argument of appellants that the building is not to be used for school purposes. The action taken at the school-district meeting provided for an addition to the school building. The trial court holds that the design of the building is such as to make it suitable for holding dramatic and athletic exhibitions and also for the purpose of classrooms, or additional rooms for use in connection with the old building, as the needs of the school might require. Appellants argue that the defendants, in any event, have no authority to issue bonds and construct a building to be used as a gymnasium. In view of the action taken at the annual school meeting, and the proceedings subsequent thereto, and the findings of the trial court, this argument of appellants is quite far-fetched. But even if the record disclosed that the sole purpose of the building was for the teaching of dramatics and athletics we should be slow to hold that defendants would have no authority to proceed. We have been cited to no authority holding, and we would be reluctant ourselves to hold, that the study of dramatic expression, or that physical training, were not educational subjects. It is a matter of common knowledge, of which this court may take judicial notice, that such subjects are taught

in practically all the high schools, colleges and universities in this state.

The court found the assessed value of the property in the defendant school district to be less than half a million dollars. Appellants argue that chapter 241 of the Laws of 1925 establishes the legislative policy of this state with respect to high schools, and provides that no high school should be organized when the assessed value is less than two million dollars. The defendant school district was not organized under this statute; it had been organized many years, and the full high-school course of instruction had been given for more than a year prior to the enactment of this statute. The statute is not applicable here.

Appellants argue that the expense of maintenance of the proposed increased facilities under existing statutes is a practical impossibility. If defendants are acting within their legal rights the practicability of their action is for them to decide—not for this court.

Appellants argue that the proposed bond issue of $12,000 is in excess of that authorized by law. The contention is that R. S. 10-301, which places the maximum limit of bonded debt at 1⅕ per cent of the assessed value, controls this issue of bonds, rather than R. S. 72-2001, which places such limit at 5 per cent. We think R. S. 72-2001 is the controlling statute, under the authority of *City of Arkansas City v. Turner, State Auditor,* 116 Kan. 407, 226 Pac. 1009.

Defendants, by cross appeal, have raised a question which should be determined. When the trial court decided for defendants, it dissolved the temporary injunctions previously granted but gave plaintiffs ten days to perfect an appeal to this court, and stayed the order of the court dissolving the temporary injunctions for such time, and further ordered that if plaintiffs perfected the appeal within that time that the judgment of the court dissolving the temporary injunctions be stayed, and the bonds given by plaintiffs be continued in force pending such appeal. Appellees contend that the trial court had no authority to make such order under the statute (R. S. 60-3331), and argue that while the statute deals both with attachments and injunctions, it is only the attachments which are allowed to remain in force pending the appeal—and that the word "injunction" is not used in that connection. It is clear the statute was drawn to apply both to attachments and injunctions,

and that the apparently inadvertent omission of the word injunction in the last clause of the section does not destroy the purpose of the statute.

The judgment of the court below is affirmed.