No. 33,748

THE STATE TAX COMMISSION OF THE STATE OF KANSAS, *Plaintiff*, v. THE BOARD OF EDUCATION OF THE CITY OF HOLTON et al., *Defendants*, and THE BOARDS OF EDUCATION OF THE CITIES OF PARSONS, FORT SCOTT AND COFFEYVILLE, *Intervenors*.

(73 P. 2d 49)

Opinion filed November 6, 1937.

*D. C. Hill*, attorney for the state tax commission, for the plaintiff.

*Albert M. Cole*, of Holton, for the defendants.

*Payne H. Ratner, Stuart T. McAlister, Louise Mattox*, all of Parsons, and *F. W. Bayless*, of Fort Scott, for the intervenors.

The opinion of the court was delivered by

THIELE, J.: This is an original proceeding for a writ of mandamus to compel the defendant board of education of the city of Holton to collect a tax on the sale of admissions to certain school activities. The defendant has answered. The boards of education of Parsons, Fort Scott and Coffeyville have been permitted to intervene and have filed answers.

The relief sought arises under the so-called "sales tax law," being

chapter 374 of the Laws of 1937. The particular provision before us is included in section 3 and for our purposes reads:

"SEC. 3. From and after June 1, 1937, for the privilege of engaging in the business of selling tangible personal property at retail in this state or rendering or furnishing any of the things or services taxable under this act, there is hereby levied and there shall be collected and paid a tax as follows: . . .

"(e) A tax at the rate of two percent upon the gross receipts from the sale of admissions to any place of amusement, entertainment, or recreation, excepting, however, . . . gross receipts from educational, . . . activities where the entire amount of such receipts is expended for educational, . . . purposes."

Under other provisions of the act, the tax is to be paid by the consumer or user to the retailer, who shall account to the state tax commission.

The petition alleges that the board of education of Holton maintains and sponsors, together with regular courses of study, activities which are not a part of the regular school curriculum, not only for the benefit of the school students, but for the general public; that an admission charge is made and the entire proceeds from such admissions do not go for educational purposes; that among such activities are athletic contests such as football, basketball and track, between teams sponsored by defendant and teams of other schools, and literary events, musical recitals and entertainments, dramatics, dances, lecture courses and similar activities, and that at certain activities food and other articles are sold at retail; that defendants refuse to comply with the above statute by registering as retailers and collecting the tax.

The answer of the board of education of Holton admits the maintenance of the extracurricular activities and states the same were approved by it after due consideration, as being educational, religious or charitable; that such activities are under direction and supervision of teachers and supplement the educational program. The board admits that admission charges are made for some of the activities, and that the receipts therefrom are paid to the principal of the schools and paid out by him, a separate fund being maintained for each activity. Although the answer alleges the entire amount of receipts is expended in furtherance of the educational program in its various phases, it is also stated that certain of the organizations, Junior and Senior Girl Reserves and Junior and Senior Hi-Y, sell food and soda pop at athletic contests and parties, the entire receipts being used for educational purposes. Similar statements

are made with respect to dramatic and musical entertainments, except that part of the dramatic proceeds are used for a junior-senior class banquet. With reference to dances, it is alleged the admission is not open to the public generally and the entire receipts are used to defray expenses of orchestra, decorations and refreshments. It is also alleged that activity tickets are sold to students admitting them to all athletic contests, all school plays, debates, assemblies, pay movies and other activities, the receipts going to the principal and being disbursed by him to pay the entire expense of some of the activities and a part of the expense of others. Exhibits are attached which show in some detail the nature of receipts and expenditures, but not the amount thereof. With reference to athletics, the receipts include "sale of sweaters," which obviously means they were first purchased, sale of tickets at gate, sale of season tickets, and guaranties received from other schools. The expenses include officials' fees, supplies and equipment and express charges, advertising, expenses paid visiting teams, transportation expenses of the Holton team, laundry, rule books and electricity for lighting the playing field. The school newspaper received moneys from the board of education and for advertisements and subscriptions and disbursed it for printing, postage and supplies. The girl reserves and Hi-Y fund received moneys from the sale of confectionery, contributions, sales of banquet tickets, pencil sales and dues, and expended it for dues to the state organization, supplies sold, expenses of picnics and parties, telephone calls, basketball suits, speaker's expense and purchase of gift. The activity fund received money from sale of activity tickets and other admissions and expended it by some payments to the athletic fund, purchase of confectionery and food for parties, for an all-school party, for express, etc.

The intervenor board of education of the city of Parsons, in its answer, sets up a list of its receipts and expenditures for similar activities. Without going into detail, the situation is not materially different there than at Holton. The other intervenors adopted the answer of the board of education of the city of Parsons.

Plaintiff contends the activities above mentioned are not "educational" in character and that therefore there is no exemption from the tax imposed by the above act. We shall treat that contention as though no objection could be made to any item of receipts or expenditures. Attention is directed to the following statutes: G. S.

1935, 72-102, 72-103, directs the state board of education to prescribe courses of study; G. S. 1935, 72-1101, prescribes certain subjects which must be taught and authorizes the state board of education to determine others; G. S. 1935, 72-3510, makes provision for the course of study in rural high schools, and G. S. 1935, 72-40a01, makes similar provision for junior high schools. Acting under the above and other authorizations, the state board has provided courses of study which include training in the subjects required to be taught and many other subjects, including health, music, art, drama, etc. Many years ago it was decided that boards of education in first-class cities are vested with a large discretion in all matters pertaining to the management of schools and may determine what subjects shall be taught, "but they should always keep in view the highest good of the schools." (*Board of Education v. Welch*, 51 Kan. 792, 33 Pac. 654.)

In *Epley v. Hall*, 97 Kan. 549, 155 Pac. 1083, it was held that a district school board could provide that branches of learning other than those prescribed by G. S. 1909, § 7478 (since amended, and now G. S. 1935, 72-1101), be taught and in the discretion of the board could provide for instruction in music.

In *Woodson v. School District*, 127 Kan. 651, 274 Pac. 728, the matter received more consideration, and it was there held:

"A common-school district has authority under the statute to add subjects to its course of study so as to include what is commonly known as a high-school course. It also has authority to construct a building needed for school purposes and to issue and sell bonds for that purpose. The fact that such a building might be designed so that it can be used in part for dramatic and athletic instruction does not deprive the school district of its authority to construct such building." (Syl. ¶ 1.)

It thus appears that the board of education has considerable discretion to exercise in determining just what subjects may be taught in the schools. Under G. S. 1935, 72-1735, school boards and boards of education are authorized to provide either by themselves or in coöperation with officers having custody and management of public buildings or public parks, public recreation places and playgrounds and to provide for necessary supervision, instruction and oversight, to carry on public educational and recreational activities. And so it appears the legislature has explicitly authorized a board of education to engage in athletic or other recreational activities.

From what has been said it follows that the various boards of education, in providing for and sponsoring the various activities

mentioned, have exercised a discretion which the statutes and the law have vested in them, and with which we may not interfere unless a clear case of fraud or abuse is shown. (See *Tripp v. Board of Education,* 116 Kan. 614, 227 Pac. 345, and cases cited.)

We need not enter into a discussion of whether the activities described fit in with various definitions of the word "education" or its derivatives. The board of education has concluded they are a part of its educational program. There is nothing in the pleadings nor in such admissions as were made on submission of this cause, which would warrant us in saying the program of activities is not educational in character.

Plaintiff argues that even though the activities be educational as applied to the students of the school, they are not so where a charge is made and the general public is permitted to attend. We are not persuaded the legislature believed the activity would be educational if only students attended, but would not be if the public in general attended. It may well be doubted the legislature would have imposed any tax if attendance were limited to the students. We are of the opinion the act contemplates a general admission charge, otherwise there would not be much point to the exemption provision, and that this is true is apparent when it is remembered that the class of receipts exempted under this subsection of the statute is not limited to educational activities.

It is apparent, however, that included in the receipts are the proceeds of the sale of various articles purchased for resale. It requires considerable imagination to see where that particular activity was ever proposed by any board of education or sponsored by it or where it partakes in any particular of an educational activity. The proceeds from the sale of sweaters and from confectionery and soda pop represented nothing more or less than gross receipts from the sale at retail of tangible personal property. But assuming for the moment that the gross receipts were purely from educational activities, in order to be exempt under the act, it must appear the entire amount of such receipts is expended for educational purposes. It is argued by the defendants and intervenors that all items of disbursement made are either directly spent for educational purposes or in payment of expense so incidental thereto that it must be held the expense items are part and parcel of the educational activity; that insofar as athletic contests are concerned, officials for games must be hired, the place of the contest lighted, the contest advertised so that

the students and public may be aware it is to occur; that expenses or guaranties to visiting teams must be paid; that the school team must have proper equipment. We need not now decide just where the line is that determines where the expenditure passes beyond an educational purpose, but we are clear the purchases of athletic goods, confectionery and soda pop for resale were not expenditures for educational purposes. And in connection with the Girl Reserves and Hi-Y activities, we have no difficulty in determining that using a part of its funds for the purpose of defraying the expenses of parties and picnics and for the purchase of gifts for some unmentioned recipient lacks much of being an educational purpose, and the same may be said concerning the use of activity funds for the purpose of an all-school party. Another activity is school dances limited generally to students who pay an admission charge, the total of the admission charges being expended for orchestra, decorations and refreshments. The fact the dance is given by students for students is in no sense different than if it were given by a social club for its members. The purpose is recreational and for pleasure. If there is any educational purpose, it is submerged by the other purposes. Other activities will not be specifically noticed.

While the bookkeeping methods may be such that particular activities are credited with certain receipts and charged with certain expenditures, it is clear that activity tickets are sold on the basis of admission to a series of activities for which a charge is made. It is also clear that funds arising from one activity are used in connection with another. Although there may be an allocation of receipts and expenditures, it is arbitrary. We look to the substance and consider the matter as though the activities constitute an indivisible whole. Here part of the receipts arise from, and part of the expenditures are for, purposes other than educational purposes. The whole matter is so interwoven that separation should not be indulged.

It is argued by defendants and the intervenors that to hold a tax is due under the circumstances is to hold that each board of education is a "retailer" under the act. The word is one of definition as used in the act, and as applied here refers to one furnishing entertainment for which a charge for admission is made. It is also argued that under section 2 (k) of the sales-tax act the sales are isolated or occasional and hence the sale of things taxable thereunder by a person not engaged in such business does not constitute engaging in business within the meaning of the act, and therefore no

tax is due. The argument is inconsistent with the claim the program is sponsored by the boards of education. That of itself means a contemplated, determined course of action which is completed by performance. Under such circumstances, what is done cannot be said to be either isolated or occasional. Some argument is based upon the fact that the state tax commission has, under authority given it, declared a rule which in effect is the same as the subsection of the statute under consideration, and has, in administration under it, arrived at what are declared to be inconsistent positions. We are determining only the matter before us. If the tax commission has seen fit to allow an exemption in another case seemingly inconsistent with what it contends for in this case, it cannot be allowed to affect our judgment here. Neither shall we devote any space to the argument that to hold the defendants subject to tax is to interfere seriously with the conduct of the schools in carrying on the activities. The tax is not paid by the schools, but by the persons who see fit to attend the performances to which an admission is charged. The only duty enjoined on the school is to collect and remit the tax—it has no burden otherwise. It may be observed, further, that even that burden is not obligatory except as the schools by their own action make it so. The right of the schools to carry on the activities mentioned is not at issue and cannot be in this case, and the plaintiff makes no contention in that respect. If the schools desire to carry on the activities without admission charges, then there is no room for operation of the act. In any event, the act imposes no undue burden on the schools, rather it is a great benefit to them generally, for under section 21 they participate to the extent of $2,500,000 per year if the total tax collected produces the requisite amount of money.

It is a well-known rule of law that exemptions from tax statutes are to be strictly construed against the claimant for exemption. (See *Alpha Tau Omega v. Douglas County Comm'rs*, 136 Kan. 675, 18 P. 2d 573, 2 J. B. K. 228, and cases cited.) Answering the argument the legislature never intended to tax receipts from school activities, it may be noted there is no such exemption provision in the statute, and the very language of the act providing for tax on admission to educational activities under the conditions of the act refutes the contention.

The writ of mandamus compelling the defendants to register and to collect the tax as required by chapter 374 of the Laws of 1937 is allowed.

SMITH, J. (dissenting): I find myself unable to agree with the conclusion reached by the majority. In a determination of a question such as this it is the duty of this court to interpret the statute so as to give effect to the intention of the legislature. We are not concerned with the wisdom of the provisions.

Section 3 of chapter 374, Laws of 1937, provides, in part, as follows:

"From and after June 1, 1937, for the privilege of engaging in the business of selling tangible personal property at retail in this state or rendering or furnishing any of the things or services taxable under this act, there is hereby levied and there shall be collected and paid a tax as follows: . . . (e) a tax at the rate of two percent upon the gross receipts from the sale of admissions to any place of amusement, entertainment, or recreation, excepting, however, admissions to state, county, district, and local fairs and the gross receipts from educational, religious, or charitable activities where the entire amount of such receipts is expended for educational, religious, or charitable purposes."

Let us examine the above language. In the first place, we find "a tax at the rate of two percent upon the gross receipts from the sale of admissions to any place of amusement, entertainment, or recreation." Were it not for the above provision there would be no question before us. It is the above provision that places the tax on the activities with which we have to deal if it is placed there at all. But the legislature that placed this tax also provided some exceptions to it. Note first that this tax is "upon the gross receipts from the sale of admissions." The next clause is "excepting, however, admissions to state, county, district and local fairs." Note this exception says "admissions," not the "gross receipts from the sale of admissions," as in the clause putting the tax on. If the language of the section stopped there then we would still have no question. But the legislature had still further exceptions in mind. The next provision is as follows: "and the gross receipts from educational, religious, or charitable activities where the entire amount of such receipts is expended for educational, religious or charitable purposes." Note that this clause relates back to the word "excepting" at the beginning of the preceding clause. It must be noted that the words used here are "gross receipts" not "gross receipts from the sale of admissions" as used in the clause putting the tax on, not "admissions" as used in the clause providing for the first exception, but "gross receipts." There need be no conjecture as to what the legislature meant when it said "educational activity." Every person who has talked to an educator in recent years knows that.

But let us assume that the legislature consulted the dictionary. There we find among the definitions of the word activity "an extracurricular activity"—obviously the sort of enterprise that is being considered in this case. What was the reason the legislature used the words "gross receipts from the sale of admissions" in the clause putting the tax on "admissions" in the first exception and "gross receipts" in the clause with which we are concerned? There surely is some reason for it. The reason is that in the case of educational activities the legislature knew that the gross receipts were from many things besides the sale of admissions, including the sale of popcorn, peanuts, candy, sweaters, or any of the many items incidental to carrying on the activities which we find in our schools as well as from gate receipts. Bear in mind this clause is not putting a tax on, it is making an exception to the tax.

The phrase which gives us trouble, however, is the following: "Where the entire amount of such receipts is expended for educational . . . purposes."

This phrase is a limitation on the exception of which we have just spoken. Therefore, the entire amount of such receipts must be expended for educational purposes in order for the exception to take effect. The majority opinion holds that the activities mentioned in the pleadings are educational. The conclusion reached in the opinion is placed on the ground that the entire amount of the receipts is not expended for educational purposes, or, in other words, that some portion of the entire amount of the receipts is expended for some purpose that is not educational. The conclusion is, that since in the operation of some of these activities soda pop, popcorn, candy, and in one instance sweaters, are sold, this brings the entire receipts within the provision putting on the tax and takes it out of the exception. My first objection to this conclusion is that the legislature evidently intended to except the receipts from the sale of such things from the tax or it would not have used the words "gross receipts" in stating the exception instead of some form of the word "admission," as it did in the provision putting on the tax or providing for the first exception.

I hold that once it is admitted that these activities are educational, then one is led inevitably to the conclusion that any money expended for a purpose incidental to these activities is expended for an educational purpose. I reach that conclusion this way: There are many cases holding that the building of a stadium or gymnasium

is expending public money for an educational purpose. In view of these holdings the cinder path upon which the hundred-yard-dash man runs may be built with public money. The same is true of the jumping standards and the hurdles. The same must be true of the seats for the spectators, because about all a stadium consists of is seats. At least more of the money used in building a stadium is expended for seating facilities than in making the playing field. Now, of course, this money goes to sporting-goods houses, to cement companies and so forth, but as far as the school board is concerned it is expended for educational purposes, that is, making possible the carrying on of the activities mentioned. Once this conclusion is reached, where should the line be drawn? Like in the case where the money used in building the stadium in which some of the money goes to a cement company, some of the money for the sale of soda pop to the spectators is as much incidental to the carrying on of the activity as seats for the spectators. A persuasive feature leading me to this conclusion is that unless the legislature intended that this construction should be given this provision the entire provision is meaningless. I have examined the briefs carefully and fail to find to what sort of activity this exception would apply if not to the ones we have under consideration. There are no others to which it could apply.

Now as to the Girl Reserves and Hi-Y activities. This tax is placed on the money these activities receive. The prevailing opinion states that using a part of these funds for the purpose of defraying the expenses of parties and picnics and for the purchase of gifts for some unmentioned recipient lacks much of being an educational purpose. But does it? The organizations are a part of any up-to-date school program. The parties given by such organizations are in many cases the only social intercourse available to the students.

This sort of thing has become as much a part of the training given a student as the reading, writing and arithmetic of the classroom. Who are we to say that the expenditure of money for putting on such a party or picnic is not the expenditure of it for educational purposes? It is all done under the supervision of the faculty of the various schools. The benefits all flow to students participating and any student wishing to join and take part may do so.

The prevailing opinion states that the case of an all-school dance is in no sense different from that given by a social club for the members. I cannot agree with that. On an occasion recently the

writer made a speech to a high-school junior-senior banquet at a town not far from Topeka. The meeting was over at 9:30. On the way back to Topeka most of the seniors and juniors passed the speaker of the evening in their hurry to reach Topeka, where they attended a public dance. Many of the mothers at that town expressed the wish that the school authorities had seen fit to permit the students to have a dance there that night so that they would have danced under the supervision of schoolteachers rather than in a public dance hall. The holding of supervised dances is definitely a part of the educational program in up-to-date school systems. It is the modern method of dealing with a perplexing problem. Was the junior-senior banquet an educational affair? Clearly it was. Then why would not a junior-senior dance after the banquet be educational? Probably the dance would have been more entertaining than was the speaker, but does the fact that an activity is entertaining rob it of its educational features?

There is another reason I do not like this decision. It is a use of mandamus that never was intended. Mandamus is only to be used to compel action on the part of a public official where there is a clear legal duty on the part of the official. No one can read this statute nor the rule of the tax commissioners issued pursuant thereto nor the pleadings in this case without reaching the conclusion that each activity should be considered on its merits. It is a question of fact in each instance as to what is done with the gross receipts from an activity. Yet this court has issued a writ directing the authorities in the different schools, parties to this action, to proceed to collect the sales tax in the many activities conducted in their various schools. I make the statement here that neither this court nor the tax commission has any idea as to the purpose for which the receipts from any one activity are expended. How, then, can this court reach a conclusion that there is any clear legal duty on the authorities as to any particular activity? This feature is more aggravating because the writ will take effect at every school in the state. The tax commission should not be hampered in the execution of its duties with reference to the sales tax, granted. But what about hampering every schoolroom activity and all school authorities with a burden never contemplated by the statute? The practical result of this decision is to introduce the writ of mandamus into every schoolroom in the state. In my opinion the public need does not require any such action.

The practical result of the conclusion reached by the court is to overlook the question of the admissions at the gate and to conclude that the legislature when it enacted the statute in question had its eye on the parties, picnics and other trivial items of the high-school activities of the state. I think such a conclusion makes the legislature seem ridiculous.

I cannot sweep aside the argument about the making of every school board a retailer as easily as does the prevailing opinion. The decision does worse than that. It makes the treasurer of every club or similar organization at every school in the state a tax collector. Either the tax commission will be compelled to set up an account for every organization in every school in the state or the school boards in every district will be compelled to set up books to collect the receipts from every activity and account for it that way. In the larger cities this will necessitate a new employee or at least new onerous burdens on some present employee. It must be remembered it is not the payment of the tax to which objection is made, but the imposition of the burden of collecting it. To my mind this is a persuasive argument that the legislature never intended any such a result.

It is idle to state that if the schools desire to carry on the activities without admission charges there is no room for operation of the act. Does anybody have any idea that the activities will be carried on without charging admission? Does anybody know of a school where they are carried on without admission being charged? Does anyone think the legislature did not know they charged admission? A study of these questions leads me inevitably to a conclusion that the legislature had the very situation with which we are dealing in mind and intended to provide that treasurers of Hi-Y clubs and of Girl Reserves, student managers of athletic teams, managers of bands, managers of glee clubs and the financial offices of the hundreds of other clubs in the schools of the state should not be burdened with the task of collecting and accounting for this tax.

In my opinion the writ should have been denied.