## STATE v. STACK.

### No. 9609.

Court of Civil Appeals of Texas. Austin.

Jan. 22, 1947.

Grover Sellers, former Atty. Gen., of Austin, Price Daniel, Atty. Gen., and W. V. Geppert and Jackson Littleton, Asst. Atty. Gen., for appellant.

Hart & Brown, of Austin, for appellee.

HUGHES, Justice.

Appellant, the State of Texas, sued appellee, J. A. Stack, who operated under the trade name of the Peerless Tank Cleaning Company, for oil production taxes, penalties and interest under Arts. 6032 and 7057a, Revised Civil Statutes of Texas, Vernon's Ann.Civ.St. Arts. 6032, 7057a.

Trial was to the court, without a jury, and from an adverse judgment the State has appealed.

The trial court filed findings of fact and conclusions of law.

The material facts are without dispute. Appellee was engaged in the business of acquiring "tank bottoms" from oil production storage tanks in Texas. These tank bottoms were acquired as compensation for his services in cleaning such tanks. The substances removed from the bottoms of these tanks were processed by appellee in his plant and sold.

As oil is produced from the wells it is run into storage tanks and there kept until it can be delivered into a pipe line. The outlet from these tanks to the pipe lines is located from 10 to 18 inches above the bottom of the tank. Various substances, produced with the oil, accumulate at the bottom of the tank and as the level of these substances rises to a point at or near the pipe line outlet they so contaminate the oil that it cannot flow into the pipe line. When this condition is brought about the pipe line companies will no longer take the oil, and it becomes necessary for the producer to have his tank cleaned. Before the tank can be cleaned a Railroad Commission permit must be obtained. Scientific tests of the substance in the lower 10 to 18 inches of the tank are made in the presence of Railroad Commission employees. If there is any merchantable oil found such oil is charged to the producer's allowable. This charged back oil is not here involved.

In every instance where appellee acquired tank bottoms the test made by Railroad Commission employees showed that the material which he acquired was 100% tank bottoms, and that there was no oil therein chargeable to the producer's allowable.

The trial court found as a fact that the tank bottoms acquired by appellee repre-

sent an accumulation of mud, water, sand and paraffin. This finding is supported by the evidence. "Water," however, is separately treated by the statutes hereinafter referred to, and is not part of the basic sediment.

The pertinent provisions of the statutes involved are:

"Art. 6032. Tax There is hereby levied a tax of three-sixteenths (3/16) of one cent per barrel of forty-two (42) standard gallons of crude petroleum produced within this State, which shall be in addition to and collected in the same manner as the present gross receipts production tax on crude petroleum."

"Art. 6032a. Collection and report of tax The Provisions made in Chapter 162, Acts Regular Session, Forty-third Legislature, providing for the collection of the gross production tax on oil and reports required in connection with the collection of such tax, shall apply to the collection of taxes levied under the provisions of Section 1 of this Act."

"Art. 7057a. Occupation tax on oil·produced; definitions.

    *    *    *    *    *    *

"(5) 'Oil' shall mean crude oil or other oil taken from the earth regardless of gravity of the oil.

    *    *    *    *    *    *

"(8) 'Production' or 'total oil produced' shall mean the total gross amount of oil produced including all royalty or other interest; that is the amount for the purpose of the tax imposed by this Article shall be measured or determined by tank tables compiled to show one hundred (100) per cent of the full capacity of tanks without deductions for overage of losses in handling. Allowance for any reasonable and bona fide deduction for basic sediment and water, and for correction of temperature to sixty (60) degrees Fahrenheit will be allowed. If the amount of oil produced has been measured or determined by tank tables compiled to show less than one hundred (100) per cent of the full capacity of tanks, then such amount shall be raised to a basis of one hundred (100) per cent for the purpose of the tax imposed by this Article."

Appellant in his brief states the sole issue in this case to be:

"Whether the material contained in the tank bottoms at the time of their purchase by appellee and recovered from said tank bottoms was 'crude oil or oil taken from the earth regardless of gravity of the oil,' as defined by the statute under which suit was brought, the oil so contained being subject to the tax imposed by said statutes."

In our opinion this is not quite accurate, for the reason that it entirely overlooks the exception or exemption from taxation set out in Sub. 8 above, and that the true question is whether or not the substance obtained by appellee from tank bottoms is, withtin the meaning of the statutes, "basic sediment," or whether it comes within the limits of a "reasonable allowance" for basic sediment, and this regardless of whether or not such substance has any of the characteristics of oil, or is composed of some of the same hydrocarbons as oil.

Neither party has cited any authority in point. This case must, therefore, be determined in accordance with the general applicable rules of statutory construction.

■ The general rule in construing statutes containing a general provision and special provisions is that the special provisions are regarded as exceptions to the general, and the general yields to the special. 39 Tex.Jur., § 114, p. 213.

■ "Sediment" is defined as "the matter which settles to the bottom from a liquid." Webster's International Dictionary, 2nd Edition.

"Sediment" is also defined in Porter's Petroleum Dictionary, 3rd Edition, as follows:

"Sediment—Any material other than water, which separates itself below oil in a tank. Foreign matter usually sand. or dirt which settles to the bottom from a liquid."

Appellant's witness, Mr. Arthur Barbeck, Senior Engineer with the Oil and Gas Division of the Texas Railroad Commission, testified:

"The bottom eighteen inches of a tank is usually considered as your tank bottom.

The reason for declaring the bottom eighteen inches as the tank bottom is that the lower-most portion of the outlet to the pipe line is located eighteen inches above the bottom of the tank. Your various extraneous matter produced along with the oil from the ground, such as is commonly called basic sediment and water,—water inherent to the oil production—is also accumulated in the bottom of your tank. Those various elements being heavier than the oil, they naturally settle to the bottom."

In referring to the contents of these tank bottoms, Mr. Barbeck also testified:

"Q. * * * Now, the tank bottoms are taken out of the tank through a removable plate that is at the bottom of the tank; is that right? A. Yes, sir.

"Q. They have to be raked out, don't they,—they are ordinarily in such condition that they won't flow—they have to be raked or shoveled out? A. Yes, sir, most of it is that way; some at the top is lighter.

*     *     *     *     *     *

"Q. Isn't it also a fact, Mr. Barbeck, that in taking these tank bottoms out— or that is, as to the make-up of these tank bottoms, that they are not in fact an emulsion which includes all of the substances which might settle to the bottom—that is, substances including molecules of crude oil as well as basic sediment and water? A. Well, I will answer the question this way: The tank bottoms which would be raked out of the port at the bottom would contain your heavy sludges on the bottom plus anything lighter up above, which could possibly be some crude oil.

*     *     *     *     *     *

"Q. What is this sludge composed of— mud? A. Could be mud, sand and paraffin."

Appellee testified:

"Q. Just tell the court what that basic sediment or tank bottoms look like; what kind of material it is. A. Well, it is thick, heavy, loose-looking oil; in order to get it out of the tanks, we have to remove the plate and take rakes and rake it out, and on our trucks we have these gear pumps that chew the oil up.

"Q. Well, you say oil—what is it? A. Well, this bottom sediments—this tank bottoms.

"Q. Is it about the same consistency as mud? A. Just about like soft mud, some harder than others, some won't even run; you have got to go in there and push it out; it is just like clay."

After processing these tank bottoms appellee testified that the material left was about as hard as asphalt; that he had shipped some of the material to wax companies who further processed it and removed about 20% paraffin, the balance being sludge.

Paraffin is greatly used in making candles and for waterproofing paper and other fabrics.

In Magnolia Petroleum Co. v. Connellee, Tex.Com.App., 11 S.W.2d 158, the court had under construction an oil and gas lease which provided for the usual 1/8 oil royalty to be paid lessors, and which contained the provision that for casing head gas lessors were to be paid $25 per year for each well. From this casing head gas gasoline was produced and lessors contended that they were entitled to receive their portion of this gasoline as oil royalty. That gasoline is another form of oil could not be disputed. The court denied lessors recovery, holding, that the purchase of casing head gas having been specifically provided for, lessees were entitled to all of the elements composing such gas, including gasoline (oil).

So in this case the court is not concerned with whether or not paraffin has any of the qualities of oil, but only as to whether it is basic sediment.

That it is basic sediment is conclusively shown. The matter in the bottom of these tanks, no matter of what it consists, is heavier than oil, settles to the bottom, and most of which must be raked or shoveled out of the tank. It would commonly be called dregs. These characteristics comply with every definition of the word "sediment".

The manner in which the Railroad Commission fixes this allowance is certainly shown to be reasonable. Permits are required to clean tanks; the bottoms tested

in the presence of Railroad Commission employees, and all merchantable or pipe line oil is charged back to the producer, and only the remainder is moved and then only by permission of the Railroad Commission. Every precaution is taken to the end that all oil other than sediment is taxed.

We have treated the term "basic sediment" as being synonymous with "sediment." "Basic," ordinarily, means "of or pertaining to the base or essence, fundamental," and chemically means "relating to, having the character of, or relating to a base." Webster's International Dictionary, 2nd Edition.

Some oils have an asphalt base; others have a paraffin base. Presumptively the legislature had knowledge of these facts. In giving effect to its use of the word "basic", under the facts of the case, it would include paraffin, when it has so settled as to become sediment.

The above conclusions make it unnecessary to consider appellee's plea in abatement to the effect that producers of the oil from which the tank bottoms were formed are necessary parties to this suit.

The judgment of the trial court is affirmed.

Affirmed.