Paul A. HORTON, d/b/a HORTON ENGINEERING COMPANY *v.* William D. GADDY, Commissioner of Revenues

79-325                                          594 S.W. 2d 848
Supreme Court of Arkansas
Opinion delivered March 3, 1980
Rehearing denied March 31, 1980

*Woodward & Kinard*, Ltd., by: *Joe D. Woodward*, for appellant.

*James R. Eads Jr., Robert G. Brockmann, Joseph V. Svoboda, Barry E. Coplin, H. Thomas Clark, Jr.*, and *Martha S. Stephenson*, by: *Timothy J. Leathers*, for appellee.

JOHN F. STROUD, Justice. This is a suit to determine if the oil reclaimed from the sediment in the bottom of oil storage tanks should be taxed under the Arkansas Severance Tax statutes. We disagree with the decision of the trial court in its determination that the tax was due.

Appellant has been engaged for many years in the business of cleaning oil field storage tanks in or around Columbia County, Arkansas. After oil has been stored in the tanks, a substance known as BS&W (basic sediment and water) collects at the bottom. When the BS&W in the storage tank builds sufficiently, the tank must be cleaned or the oil in

the remainder of the tank will be of a substandard quality and, thus, unmarketable. Appellant removes the BS&W with a large suction device, cleans the inside of the tank and then takes the BS&W to his own treating plant where, by various processes, he extracts the salvageable crude oil. Appellant does not pay the oil lease operator for the BS&W, as it is given to him in exchange for his cleaning services.

Appellee claims, pursuant to Ark. Stat. Ann. § 84-2102 (Repl. 1960), that the process described above subjected appellant to liability for the severance tax from January 1, 1963, to December 1, 1965, on the oil he extracted from the BS&W. This statute provides, in pertinent part:

> There is hereby levied . . . [a] 'severance tax' . . . predicated . . . at the rates hereafter in the section provided:
>
> (e) . . . on oil, *five per cent (5%) of the market value at time and point of severance;* . . . (Emphasis added).

In 1967, appellee filed a certificate of indebtedness with the Circuit Clerk of Columbia County for the severance tax claimed to be due from appellant for the period in question. Appellant then filed a petition in Columbia County Chancery Court asking that the certificate of indebtedness be quashed and that the appellee be enjoined from proceeding further in collecting the tax.

The case was submitted on the testimony of appellant and a stipulation of the relevant facts. The Chancellor denied and dismissed appellant's petition for injunction and held that severance tax in the amount of $2,886.81 was due from appellant for the period from January 1, 1963, to December 1, 1965. From that order appellant brings this appeal, alleging that the trial court's finding was contrary to the law and the evidence.

Appellant does not claim an exemption, but contends that the correct interpretation of the severance tax statutes relieves his tank cleaning and oil salvage business from any severance tax liability. The most pertinent part of § 84-2102,

as noted previously, is the phrase that reads, "5% of the market value at the time and point of severance." Ark. Stat. Ann. § 84-2101 (Repl. 1960) defines "sever," "time of severance" and "point of severance," which are critical to the determination of the issues here. They provide, in part, as follows:

> (c) 'sever' . . . shall mean natural resources cut, mined, dredged or otherwise taken or removed, from commercial purposes, from the soil or water; . . .

> (d) 'point of severance' shall mean the place at which transportation of natural resources has been or is about to be commenced for their use or processing after being severed;

> (e) 'time of severance' shall mean the date on which transportation of natural resources has been or is about to be commenced for their use or processing after being severed;

Appellant contends that the time and place of severance of the BS&W should be the same as that of the oil from which it settled. The time of severance of the oil sold to a refining company occurs when the oil reaches the storage tank and, thus, becomes ready for removal and transportation. In *Phillips Petroleum* v. *Heath,* 254 Ark. 847, 497 S.W. 2d 30 (1973), this court held that oil consumed by the operator to produce steam to inject into the earth to increase the productivity of its oil wells was used for commercial purposes and, accordingly, subject to the severance tax. Addressing the point of severance, the court noted, at 254 Ark. 849, 497 S.W. 2d 31:

> It seems quite clear to us that, when the oil reached the storage tank, transportation was about to be commenced for its use, either by appellant for fuel or to the market for sale.

Appellee contends that the severance does not occur until appellant removes the oil from the BS&W at his treatment plant and places it in a storage tank for immediate sale to a refining company. We disagree with this premise and believe

the more reasonable view is that the place of severance for the BS&W is the same as for the oil in the upper part of the storage tank which is not so heavily mixed with sand, sediment and water.

Thus, pursuant to § 84-2102, appellant is liable for severance tax in the amount of 5% of the fair market value of the BS&W at the time and place of severance—when the BS&W (containing more oil) reached the storage tank of the lease operator and was about to be transported by appellant. In this case it was the uncontroverted testimony that the BS&W was worthless when it was removed from the tank. Therefore, at the time and point of severance, as the BS&W was worthless, no tax liability resulted. This is consistent with the custom of the oil industry as evidenced by the stipulation of the parties that royalty is not ordinarily paid on BS&W. We do not, however, preclude the possibility of a severance tax being due on BS&W in the future if the oil suspended in it becomes so valuable that it becomes saleable.

This construction of § 84-2101 and § 84-2102 is also supported by the rule of statutory interpretation that taxing statutes are to be strictly construed against the taxing authority. *Cook* v. *Arkansas-Missouri Power Corp.,* 209 Ark. 750, 192 S.W. 2d 210 (1946); *Thompson* v. *Chadwick,* 221 Ark. 720, 255 S.W. 2d 687 (1953); *Morley* v. *Pitts,* 217 Ark. 755, 233 S.W. 2d 539 (1950). The parties stipulated that until 10 or 15 years ago, BS&W was burned, buried or used to dust-proof oil field roads. The General Assembly, therefore, could not have contemplated taxing oil salvaged from BS&W when it adopted the Severance Tax Act in 1947, and we are not willing to stretch its construction to that extent. Accordingly, the order and decree of the trial court must be reversed.

JOHN I. PURTLE, Justice, dissenting. I respectfully dissent. In order to reverse, the chancellor, the majority has overruled *Phillips Petroleum* v. *Heath,* 254 Ark. 847, 497 S.W. 2d 30 (1973) and ignored or misconstrued Ark. Stat. Ann. § 84-2101 (Repl. 1960), particularly (d). Some additional facts are necessary in order to explain my position in this case.

Oil is normally collected from the various wells and

stored in holding tanks until it is sold to the refineries. When a purchaser takes possession of the oil it is metered when it leaves the storage tank. The outlet from the storage tank is located about one foot above the bottom of the tank. The contents of the oil storage tank below the outflow valve are called BS&W. This portion in the bottom of the tank is not suitable for marketing to the refineries in its present form. Appellant then comes to the tank and takes possession of the product below the outlet line and takes it to his plant where it is processed at considerable expense before being finally placed in a storage tank similar to the ones from which he obtained the material. When he has completed the process he sells to the refineries from the storage tank just as the original producers had sold theirs. It appears to me the severance point has simply been removed from one point to another. Practically all of the oil in the storage tanks has been moved a considerable distance from the well for the purpose of storing it. Appellant's oil from his tanks, after he has produced the BS&W, is sold and distributed exactly in the same manner as was the product from the tanks from which he obtained the BS&W. Whatever expense he has incurred in refining this product is a business expense and deductible the same as the expense incurred by the owners and producers from whom he obtained his product. His profit is smaller but so are the taxes. The statute defines the "point of severance" as "the place at which transportation of natural resources has been or is about to be commenced for their use or processing after being severed." I believe the severance point for appellant's crude oil is at the outlet valve from his storage tank as it is delivered to the refineries just as it is with the original owners.

I was unable to find anything in the record, other than the statement of appellant, that the BS&W was worthless when he took possession of it at the storage tanks. In fact, it is obviously not a worthless product.

There is no evidence in this record to indicate appellant is connected with the operators or producers in this area other than as a businessman dealing at arm's length. However, if this product continues to rise in price and the outlet valve is raised another foot from the bottom of the storage tank, it is obvious that the product, whether called

BS&W or something else, would be much more valuable. Under these circumstances, a close friend, relative, or subsidiary organization, could make a handsome profit as well as evade severance tax on still more oil. It is logical that it would not be too long before the untaxable oil exceeds the amount in quantity of the taxable oil.

No severance tax has been paid on the product which appellant processes. Under the majority opinion no tax will ever be paid on this oil, which is apparently at this time the same grade and quality of that for which taxes are collected from other producers and operators. It is true that some taxable oil is used in the process but it is also true that appellant is given credit for any oil used upon which a severance tax has already been paid. I can see no logical reason to exclude oil from the severance tax simply because a different process is used to place it into the market. The statute, which is set out in the majority opinion, clearly appears to cover this oil as well as the oil sold from the other tanks. For the above reasons I would affirm the decree of the chancellor in this case.

I am authorized to state that Mays, J., joins me in this dissent.