No. 56,515

DIRECTOR OF TAXATION, DEPARTMENT OF REVENUE, *Appellant,* v. KANSAS KRUDE OIL RECLAIMING COMPANY, *Appellee.*

(691 P.2d 1303)

Opinion filed December 11, 1984.

*Mark A. Burghart* argued the cause, and *William L. Edds,* general counsel, Department of Revenue, was with him on the briefs for appellant.

*Dale M. Sprague,* of McPherson, argued the cause, and *Timothy E. McCoy,* of McPherson, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: This is an appeal by the Director of Taxation from an order of the Kansas Board of Tax Appeals granting the product identified as basic sediment and water (BS&W) an exemption from the Kansas Mineral Severance Tax, K.S.A. 1983 Supp. 79-4216 *et seq.*

Taxation is the power by which the State raises money to defray the necessary expenses of government for a public purpose. In 1983, the legislature passed and the Governor signed the Mineral Severance Tax Act to meet the State's fiscal needs and to provide additional resources for educational and highway funding. The tax is an excise tax based upon the privilege of severing specified minerals from the earth and water of this state.

An excise tax is a charge imposed upon the performance of an

act, enjoyment of a privilege, or the right to engage in an occupation. The term "excise tax" and "privilege tax" have been used interchangeably.

The Mineral Severance Tax Act (Act) imposes an excise tax upon the severance and production of oil in Kansas, effective May 1, 1983. K.S.A. 1983 Supp. 79-4216 *et seq.* No specific exemption for crude oil contained in BS&W is included in the exemption section, K.S.A. 1983 Supp. 79-4217(b). K.S.A. 1983 Supp. 79-4217(a)(1) does allow a reasonable and bona fide deduction for BS&W when the amount of oil or gas produced is measured by tank tables.

Persons falling within the category of producer are required to pay their rateable share of the excise tax. Those persons considered first purchasers are required to withhold the tax and remit the same to the State. K.S.A. 1983 Supp. 79-4220(a).

The creation of BS&W was described in an early Kansas case, *Hamilton v. Gas and Fuel Co.*, 117 Kan. 25, 230 Pac. 91 (1924):

" '. . . During the early development in the El Dorado field there was very little water commingled with the oil as it was produced. It was comparatively free from impurities and was marketable in the condition in which it was pumped. Later salt water came into the wells and gradually increased in volume, and during the last few years a large percentage of the fluid produced by the wells has been salt water, amounting to many leases to more than ninety per cent. This is commingled with the oil and has to be pumped out with it. The mixed fluid thus pumped out is run into a tank. Since the water is heavier than the oil, a considerable portion of it settles by gravity into the bottom of the tank and is drawn off without disturbing the oil. A large amount of water, however, remains mixed with the oil, and under ordinary temperature will not separate. It was found that by heating the mixture a still greater portion of the water, which has remained suspended in the oil, could be separated and precipitated to the bottom and again drawn off; but even when the fluid was heated the water descending carried with it considerable oil. This mixture, with such other impurities as are brought up by the pump, forms an emulsion at the bottom of the tank, which is called "basic sediment," or most generally "B.S." This B.S. gradually thickens in the bottom of the tank, and much of it has to be scraped out and thrown away, and most operators deposit it in large artificial ponds upon the leases, where occasionally it is finally disposed of by burning.' " 117 Kan. at 29.

Kansas Krude Oil Reclaiming Company (Kansas Krude) is in the business of reclaiming pipeline quality petroleum from BS&W and selling the reclaimed product to refiners. Reclaiming involves the treatment of BS&W with chemicals and heat in established treatment plants and facilities. The objective of the

process is to separate the impurities in BS&W from the oil to produce a marketable pipeline quality petroleum.

Kansas Krude buys BS&W from tank cleaners and/or lease operators at a fixed price based on an estimate of the quantity of recoverable oil contained in the BS&W. The estimate is based on a process known as "grind out" which determines how much oil is contained in the emulsion. The grind-out process, however, is only an estimate, and the company does not always recover the amount of oil it estimated it would recover. Kansas Krude pays the operator or "bottom hauler" a per barrel price which is for the sludge and BS&W, not the price of a barrel of pipeline quality oil. The BS&W is purchased in loads averaging 20 - 30 barrels from all types of leases, some of which are exempt from taxation under the Act. All BS&W is commingled in batches of 250 barrels for processing through the plant facilities of Kansas Krude.

The Department of Revenue (the Department) issued an opinion June 23, 1983, which concluded that BS&W was within the definition of "oil" as defined in the mineral tax statute and was, therefore, subject to the tax. By taxing the BS&W, the Department treated Kansas Krude as "first purchaser." Kansas Krude is not responsible for the payment of the excise tax from its profits, but is required to withhold the tax from its payment to the seller and to remit the tax to the Department. On July 21, 1983, Kansas Krude appealed. The Board of Tax Appeals (BOTA) conducted a hearing on August 22, 1983. BOTA issued its opinion October 26, 1983, concluding that the product identified as BS&W was granted an implied exemption and assigned an allowance from taxation based on 79-4217(a)(1) of the Kansas Severance Tax Act. After its motion for rehearing was denied, the Department filed its notice of appeal on January 17, 1984.

The Act imposes a tax upon the severance and production of coal, salt, oil or gas for sale, transportation, storage, profit or commercial use of these minerals. Severance of oil defined in K.S.A. 1983 Supp. 79-4216(k) means the production of oil through extraction or withdrawal of the same from below the surface of the soil or water by natural flow, mechanical flow, forced flow, pumping or any other means employed to get the oil from below the surface of the soil or water and shall include the withdrawal by any means whatsoever of oil upon which the tax

has not been paid, from any surface reservoir, natural or artificial, or from a water surface.

The Department claims that whether oil recovered from BS&W is subject to the excise tax imposed under the Act involves only a question of law and, therefore, the appellate court's review of BOTA's decision is unlimited. In addition, the Department claims that BOTA acted arbitrarily and capriciously, BOTA's order was contrary to the evidence and BOTA exceeded its statutory authority. Kansas Krude claims that a BOTA decision carries with it "a strong presumption of correctness" and, therefore, should not be overturned.

K.S.A. 1983 Supp. 74-2426(e) denies an appeal from any order pertaining to the assessment of property for ad valorem tax purposes or the assessment of excise taxes unless the order is unreasonable, arbitrary or capricious. Where a court reviews an agency's order on a question of law, that review is not limited by the statute. In reviewing questions of law, a court may substitute its judgment for that of the agency. BOTA's determination that our legislature granted an implied exemption and assigned an allowance from taxation to BS&W under the Act is a question of law, therefore subject to our review without the limitations imposed by K.S.A. 1983 Supp. 74-2426(b)(4).

The Department argues that the oil recovered from BS&W is oil within the statutory definition. Since there is no difference in crude oil of pipeline quality and the crude oil removed from BS&W, there is no logical reason to exclude crude oil removed from BS&W from a tax simply because a different process is used to obtain marketable crude oil. Kansas Krude concedes that BS&W has no value unless it contains sufficient recoverable crude oil of pipeline quality.

The excise tax imposed on the severance of oil is to be applied equally to the gross value of each barrel of oil severed at 8% of the gross value. K.S.A. 1983 Supp. 79-4217. The gross rate is the sales price of oil at the time of removal of the oil from the lease or production unit. Where the sales price is not the true value or market price of the oil subject to tax, then the Director is allowed to determine the value of the oil subject to the tax. The Department has determined the price per barrel for oil severed is that price per barrel that a willing buyer will pay for a barrel of crude oil or a barrel of BS&W containing crude oil. The lower price

paid per barrel for BS&W actually reflects the market value of the recoverable crude oil contained within the BS&W.

The Director asserts there are no provisions in the Act which specifically exempt BS&W containing crude oil from the excise tax; since BS&W is not specifically exempted from the taxing provisions of the Act, it is subject to the excise tax; and the fact that crude oil may be commingled with other nonpetroleum elements in BS&W does not alter its character to such an extent that it is no longer treated as crude oil for tax purposes.

The pertinent provisions of the Act are:

K.S.A. 1983 Supp. 79-4217(a), which imposes an excise tax upon the severance and production of oil from the earth or water in this state.

K.S.A. 1983 Supp. 79-4216(e), which defines "oil" to mean petroleum or other crude oil severed.

K.S.A. 1983 Supp. 79-4217, which sets the excise tax upon the severance of oil at 8% of the gross value of each barrel of oil severed; and in the case of oil, an allowance for any reasonable and bona fide deduction for BS&W (79-4217[a][1]). Exemptions from the tax imposed are set out in 79-4217(b). None of the listed exemptions contained within the statute are for BS&W.

BOTA in its October 26, 1983, opinion concluded that the legislature had granted an implied exemption when BOTA determined that BS&W was exempt from the severance tax. BOTA found it was not necessary for the legislature to expressly create an exemption, and that the legislative intent to exempt BS&W was clear when considering the entire statute, not merely the isolated parts.

The power of the legislature to express what property shall be taxed implies the power to prescribe what property shall be exempt. The fundamental rule in Kansas is that a tax exemption statute is to be construed strictly in favor of imposing a tax and against an allowance of an exemption for one who does not clearly qualify. *Board of Park Commr's, City of Wichita v. State, ex rel.,* 212 Kan. 716, 717, 512 P.2d 1040 (1973). The burden of establishing an exemption from taxation is upon the one claiming the exemption. *Topeka Cemetery Ass'n v. Schnellbacher,* 218 Kan. 39, 42, 542 P.2d 278 (1975). Here, the burden of establishing the exemption of BS&W from the severance tax falls upon Kansas Krude.

Interpretation of a statute is a question of law, and it is the function of the court to interpret a statute to give it the effect intended by the legislature. *State, ex rel., v. Unified School District,* 218 Kan. 47, 49, 542 P.2d 664 (1975). It is a fundamental rule of statutory construction to which all other rules are subordinate that the intent of the legislature governs when that intent can be ascertained. *State v. Sexton,* 232 Kan. 539, 657 P.2d 43 (1983).

Tax statutes will not be extended by implication beyond the clear import of language employed therein, and their operation will not be enlarged so as to include matters not specifically embraced. The rule of strict construction means that ordinary words are to be given their ordinary meaning. Such a statute should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it. *State v. Luginbill,* 223 Kan. 15, 574 P.2d 140 (1977), relying upon *State v. Bishop,* 215 Kan. 481, 483, 524 P.2d 712 (1974), and *State, ex rel., v. American Savings Stamp Co.,* 194 Kan. 297, 300, 398 P.2d 1011 (1965).

Under the Act there are no Kansas cases on point. The parties have discussed two cases from other jurisdictions. In *State v. Stack,* 199 S.W.2d 701 (Tex. Civ. App. 1947), the appellee was engaged in the business of acquiring "tank bottoms" from oil production storage tanks in Texas. The tank bottoms were acquired as compensation for his services in cleaning such tanks. The substances removed from the bottom of these tanks were processed by appellee in his plant and sold. Before a tank could be cleaned, however, a railroad commission permit had to be obtained. Scientific tests of the substance in the lower 10 to 18 inches of the tank were made in the presence of railroad commission employees. If there was any merchantable oil found, such oil was charged to the producer's allowable. The substance in question in the case had been tested and no merchantable oil was found. The court ruled this substance was BS&W which was nontaxable. The court noted in *Stack* that "[e]very precaution is taken to the end that all oil other than sediment is taxed." 199 S.W.2d at 704.

In Kansas, the Department makes no attempt to determine by testing the amount of oil found in the BS&W before it is removed from a tank. The Department taxes the oil in the BS&W based on

the market value assigned to the BS&W by Kansas Krude, which does the testing before buying the substance.

In *Horton Eng. Co. v. Gaddy, Comm'r*, 268 Ark. 183, 594 S.W.2d 848 (1980), the issue was whether the oil reclaimed from the sediment in the bottom of oil storage tanks should be taxed under the Arkansas Severance Tax statute. Based on the statutory definitions of sever, point of severance and time of severance, the court determined that the place of severance for the BS&W is the same as for the oil in the upper part of the storage tank which is not so heavily mixed with sand, sediment and water, and that the BS&W was worthless when it was removed from the tank. Therefore, at the time and point of severance, the BS&W was worthless, and no tax liability resulted. 268 Ark. at 187. The court then added it did not preclude the possibility of a severance tax being due on BS&W in the future if the oil suspended in it becomes so valuable that it becomes saleable. 268 Ark. at 187.

Since there are no Kansas cases discussing exemptions from the severance tax, an analogy may be drawn from the following cases discussing exemptions from the sales tax. See *State Tax Comm. v. Board of Agriculture*, 146 Kan. 720, 72 P.2d 965 (1937); *State Tax Comm. v. Board of Education*, 146 Kan. 722, 73 P.2d 49 (1937), 115 A.L.R. 1401; and *Grauer v. Director of Revenue*, 193 Kan. 605, 396 P.2d 260 (1964). The statutes then in effect, G.S. 1935, 79-3603(e) (1937 Supp.) and G.S. 1949, 79-3603(e) (1961 Supp.), required that a sales tax be paid on admissions to any place of amusement, entertainment or recreation. Exceptions from collection of the sales tax were created by the legislature for state and county fairs and for educational and charitable activities.

In the first two cases, the appellants were attempting to bring themselves within the statutory exemption. Rules of statutory construction for exemptions were discussed. In the *Board of Agriculture* case, the State wanted to collect a sales tax on tickets sold for grandstand events and other amusements on the fairgrounds at the state fair. All conceded that tickets to the fair were exempt from taxation, but the defendants claimed tickets to all other events should also be tax free. The court found that the intent of the legislature was that admission to the fair itself should be exempt, but that was a "distinct thing from admission to grandstands or other places of amusement within the grounds.

If the legislature desired to exempt from the tax the sale of admissions.to such places it easily could have used language which would have made that meaning clear." 146 Kan. at 721.

In the *Board of Education* case, the State wanted to collect sales tax on the sale of admissions to certain school activities, including athletic contests, literary events, musical recitals, dances and lecture courses. The schools claimed these activities came under the exception for educational activities. The court, following the rule that exemptions from tax statutes are strictly construed against the one claiming the exemption, determined that while some activities had an educational purpose and some were recreational and for pleasure, the activities had to be considered as an indivisible whole, and did not fall within the educational exemption.

In *Grauer,* the State attempted to impose a tax on league bowling. No fee was charged for admission to the bowling establishment. A charge was made only at such time as a person participated in bowling. Here, the appellee was not trying to bring himself within an exemption, as in the two previous cases and, therefore, the question was whether the legislature ever intended to levy a tax upon participation in the recreation of bowling. We determined where there is a reasonable doubt as the meaning of the taxing act, the tax statute is not extended by implication to include matters not specifically embraced. The tax was imposed on the price of admission to enter a place. Fees paid to participate in bowling were not for admission and were, therefore, not taxable.

In the present case, Kansas Krude claims that BOTA correctly determined that the legislature had created an implied exemption for BS&W. Exemptions from tax statutes are strictly construed against the claimant for such an exemption. There is no language in the statute to show that the legislature intended such an exemption and, therefore, the statute cannot be construed to allow such an exemption. BOTA's determination that the legislature implied an exemption for BS&W is wrong.

The question then is whether the legislature ever intended to tax the oil found in BS&W. The language of the statute is that the tax is imposed on the severance and production of oil. Oil is defined to include all types of oil. Had the legislature intended to exclude the oil in BS&W, it could easily have done so. The fact

that it allowed a deduction for measuring tank oil is evidence that it was aware of BS&W. The fact that it did not create an exemption for BS&W is persuasive that it was not the intention of the legislature to exempt that oil.

The purpose and intent of the legislature governs when we interpret a statute. In determining the legislative intent, courts are not limited to mere consideration of the language employed, but may properly look into the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished and the effect the statute may have under various constructions suggested. *In re Estate of Reed,* 233 Kan. 531, 541, 664 P.2d 824, *cert. denied* 464 U.S. 978 (1983). Here, the Act specifies certain exemptions to the general application of an excise tax upon the severance of oil. Where a statute specifies only certain exceptions to the general application of the statute, then other exceptions are excluded. The mention or inclusion of exemptions within 79-4217(b) implies an exclusion of other exemptions. The Kansas legislature was careful to limit the exemptions to certain types of mineral production; therefore, all other exemptions were meant to be excluded from the statute. BOTA's determination that the legislature intended to exempt BS&W from the excise tax imposed by the Act is wrong. The legislature did not exempt the oil contained in BS&W but made an allowance for a reasonable and bona fide deduction for BS&W after all recoverable oil has been removed by whatever process.

The Director claims BOTA exceeded its statutory authority when it created an implied exemption for recoverable crude oil contained in BS&W. We agree.

"In principle, legislation and administration are distinct powers, but in practical application the line which separates their exercise is not clearly marked or easily defined. However, the distinction between the legislative and the administrative function is fundamental. In their definition in practical application lies the difference between government by legislation and government by bureaucracy." 1 Am. Jur. 2d, Administrative Law § 106, p. 904.

The scope of BOTA's authority was discussed in *Republic Natural Gas Co. v. Axe,* 197 Kan. 91, 415 P.2d 406 (1966), where we found BOTA is in the executive branch of the government and has no authority to legislate or set public policy. K.S.A. 1983 Supp. 74-2433. See also *Sprague Oil Service v. Fadely,* 189 Kan. 23, 367 P.2d 56 (1961).

No legislative power has ever been delegated to BOTA by the

legislature enabling BOTA to adopt or determine laws contrary to express statutory provisions. Any such attempted delegation of power by the legislature would be an unlawful delegation of power and not binding upon this court.

Neither the Director of Revenue, BOTA nor this court can grant an exemption from a tax which has not been granted by the legislature of the State of Kansas. Granting an exemption for BS&W under the Act is a change in public policy to be initiated by the legislature, not BOTA. The question of the wisdom, justice or expediency of legislation is for that body and not for an administrative agency or the courts.

In the absence of valid statutory authority, an administrative agency may not under the guise of a regulation or order substitute its judgment for that of the legislature. It may not exercise its powers derived from the legislature to modify, alter, or enlarge the legislative act which is being administered. BOTA granted the crude oil contained in BS&W an exemption from the excise tax imposed by the Act which was not specifically or by implication granted by the legislature.

The purpose of the Act is to impose an excise tax on all oil severed from the earth, except where the legislature grants an exemption. The Department correctly determined under the Act that Kansas Krude, when a first purchaser of BS&W, is required to withhold the excise tax on the amount paid per barrel. The Department's policy of taxing the recoverable oil contained in BS&W by taxing the gross value of the BS&W is an appropriate exercise of its power. The contract price paid by Kansas Krude for a barrel of BS&W is the "gross value" as defined in K.S.A. 1983 Supp. 79-4216(d), to which the tax is applied, since the contract price takes into consideration the amount of crude oil ultimately to be recovered. The excise tax based on the lower price per barrel of BS&W, determined by the market, is the allowance for any reasonable and bona fide deduction for the BS&W which does not contain recoverable crude oil under the Act.

The order of the Board of Tax Appeals is reversed.

SCHROEDER, C.J., dissenting: The Kansas Board of Tax Appeals properly granted a reasonable and bona fide deduction for basic sediment and water, pursuant to statutory authorization in K.S.A. 1983 Supp. 79-4217(a), when it determined basic sediment and

water was not taxable under the Kansas Mineral Severance Tax Act, K.S.A. 1983 Supp. 79-4216 *et seq.*

The provisions of K.S.A. 1983 Supp. 79-4217(a) impose a mineral severance tax from and after May 1, 1983, on oil and other minerals, extracted from the earth for sale, on the gross value of each barrel of oil. The statute then reads in part:

"The rate of such tax shall be 8% of the gross value of all oil or gas severed from the earth or water in this state and subject to the tax imposed under this act. . . . For the purposes of the tax imposed hereunder the amount of oil or gas produced shall be measured or determined: (1) in the case of oil, by tank tables compiled to show 100% of the full capacity of tanks without deduction for overage or losses in handling; *allowance for any reasonable and bona fide deduction for basic sediment and water, and for correction of temperature to 60 degrees Fahrenheit will be allowed.*" (Emphasis added.)

The fact that the Director of Taxation does not follow the statutory mandate in determining the quantity of oil severed from the earth is immaterial. An erroneous method employed to impose and assess the tax should not be a basis for the Supreme Court to ignore the statute. Here, the Supreme Court in substance has rewritten the severance tax statute. The provisions of K.S.A. 1983 Supp. 79-4217(b) enumerating the exemptions are not applicable. The Board of Tax Appeals, having reached the correct decision under the Kansas Severance Tax statute, should not be reversed for having cited the wrong section of the statute. It properly considered the entire statute in ascertaining the legislative intent.

It is respectfully submitted the Kansas Board of Tax Appeals made the correct decision based on the facts in this case.