The Honorable Marge Petty State Senator, 18th District State Capitol, Room 422-S Topeka, Kansas 66612
Dear Senator Petty:
You have requested our opinion concerning a notice published in the Kansas register on January 18, 1996 by the secretary of commerce and housing. The notice solicits applications from government entities for the allocation of $150 million in authority for the issuance of tax-exempt qualified private activity bonds. Specifically, you ask the following questions:
 (1) Under what authority, if any, may the department charge application fees to governmental issuers based upon the amount of the requested allocation, and annual fees assessed as a percentage of the outstanding principal balance of any private activity bonds issued?
 If the department of commerce and housing is legally authorized to assess these fees, what restrictions apply to the deposit and expenditure of the associated revenue?
The published notice announces that the department of commerce and housing is accepting applications for allocation of private activity bond authority for qualified uses, excluding qualified mortgage bonds. Under the internal revenue code of 1986, the state of Kansas is subject to an annual state ceiling of $150 million in authority to issue qualified private activity bonds, as that term is defined by 26 U.S.C. § 141(e). According to the notice, the primary uses of qualified private activity bonds have typically included qualified small issue bonds, used for the construction and equipping of manufacturing facilities and beginning farmer programs; exempt facility bonds, used by private for-profit entities that provide facilities with a public benefit; and qualified mortgage bonds, issued to first-time home buyers. See 26 U.S.C. § 142(a) (defining exempt facility bonds); 26 U.S.C. § 143(a) (defining qualified mortgage bonds); 26 U.S.C. § 144(a)(1) (defining qualified small issue bonds). The internal revenue code provides a tax exemption for the interest earnings on qualified private activity bonds issued by the state or any political subdivision authorized to issue such bonds.26 U.S.C. § 103(a), (b)(1).
The department's notice also announces two kinds of fees associated with the allocation of the state ceiling for qualified private activity bond issuances. First, a nonrefundable application fee is required to accompany the application. The amount of the application fee varies with the amount of allocation requested, with a minimum of $250 for applicants seeking less than $5 million in bond authority, and a maximum of $1,000 for those seeking more than $10 million. Second, successful applicants are required to remit an annual fee to the department over the life of the bond issue, calculated at one-tenth of one percent (.10 %) of the outstanding principal balance. To give an example, an applicant seeking authority to issue $5 million in qualified private activity bonds would be required to pay a nonrefundable application fee of $500, plus an annual fee of $5,000 in the year of issuance. In subsequent years, the annual fee would decline in direct proportion to the outstanding principal balance.
Under authority of the internal revenue code, as amended by the tax reform act of 1986, tax-exempt qualified private activity bonds may be issued for specified purposes, not to exceed the state ceiling established by 26 U.S.C. § 146(d) for each calendar year. For Kansas, the internal revenue code establishes the state ceiling at $150 million.See 26 U.S.C. § 146(d). While the internal revenue code provides a method for allocating the state ceiling among the governmental entities authorized to issue such bonds, the state of Kansas has exercised its authority under the code to provide a different allocation formula by law. See 26 U.S.C. § 146(e)(1).
The Kansas private activity bond allocation act, K.S.A. 74-5058 et seq., authorizes the secretary of commerce to accept applications from governmental issuers seeking an allocation of the state ceiling. K.S.A.74-5060(c). The secretary is required to allocate the state ceiling in accordance with K.S.A. 74-5060, which provides very specific details on the procedure the secretary is to follow in processing applications. For example, K.S.A. 74-5060(b) requires the secretary to reserve fixed amounts of the state ceiling for specified purposes until October 15 of each year. After October 15, any portion of the state ceiling remaining uncommitted for these purposes is available for allocation to government issuers for any qualified purpose. K.S.A. 74-5060(d) requires the secretary of commerce and housing to approve properly filed applications for qualified small issue bonds in the amount of $5 million or less in chronological order of receipt. If the application exceeds $5 million, however, the secretary has the discretion to reject the application, approve the total amount requested, or approve a partial amount. Within five business days after receipt of an application the secretary is required to notify the applicant in writing whether the application has been approved, denied, or placed on hold pending the receipt of additional information or pending review of the application's effect on the state ceiling. K.S.A. 74-5060(e).
The statutes also set forth very specific time limitations on the use of approved allocations, while allowing for extensions to be granted under certain circumstances. K.S.A. 74-5060(f), (g), (j). The secretary is required to provide a certification to the governmental issuer that the bonds comply with the state ceiling requirement. K.S.A. 74-5060(i). After the issuer reports to the secretary the amount of private activity bonds issued, the statutory responsibilities of the department of commerce and housing cease with respect to that bond issuance. K.S.A.74-5061(a).
In addition to the administrative duties directly associated with processing applications for allocation of the state ceiling, K.S.A.74-5062 provides for the secretary of commerce and housing to review and evaluate the statutory method for allocation of the state ceiling for private activity bonds. If it appears the method should be revised, the secretary is to recommend to the governor and the legislature an alternative method for allocating the state ceiling. K.S.A. 74-5062.
While the act includes very specific procedures for reviewing and approving applications for private activity bond allocations, there is nothing whatsoever in the act that can be reasonably interpreted to authorize the secretary to assess application fees or ongoing annual fees based upon the amount of the outstanding principal balance of private activity bond issuances. Indeed, the act does not even authorize the secretary to adopt rules and regulations to carry out the provisions of the act. Rather, the legislature has directed the secretary to review the statutory method from time to time and, as necessary, recommend revisions. It is clear that the legislature intended, by the enactment of specific statutory language, to retain control over the details of the process of allocating the state ceiling for issuance of qualified private activity bonds.
The department of commerce and housing is an administrative agency of the state of Kansas. As such, it has only the power and authority conferred by the legislature in the agency's authorizing statutes. PorkMotel Corp. v. Kansas Dep't of Health and Environment, 234 Kan. 374, 378
(1983). Because a Kansas state agency has no general or common law powers, any exercise of authority claimed by the agency must come from within the statutes. Id. A state agency or other governmental entity that is the creature of statute is not empowered to charge a fee without express statutory authority to do so. See Attorney General Opinions No. 81-217 (grain inspection department's specific statutory authority to charge fees for inspection services rendered does not empower agency to assess additional charges to pass on federal supervision fees newly assessed to the state); 93-118 (state historical society lacks statutory authority to charge fees for commercial photographs of its collection or sites); 93-115 (drainage district, as a creature of statute, is not empowered by its statutes to charge a fee for services provided to a city, absent contractual consent).
We have been advised that the budget request submitted by the department of commerce and housing to the governor and the legislature in September, 1995, stated that beginning in January, 1996, the agency planned to charge a fee of 0.25% on all private activity bond allocations. The agency projected annual revenues from these fees totaling $375,000, plus an additional $20,000 in receipts from unspecified application fees. The information derived from the department's budget request does not indicate the statutory basis the agency relies upon for the authority to assess such fees.
The department of commerce and housing has supplied us with the written opinion of its contract attorney dated December 29, 1995, which concluded that the agency is empowered to impose such fees by the authority conferred in K.S.A. 1995 Supp. 74-5005(o). This statutory provision reads as follows:
 "The department shall be the lead agency of the state for economic development of commerce through the promotion of business, industry, trade and tourism within the state. In general, but not by way of limitation, the department shall have, exercise and perform the following powers and duties:
. . . .
 "(o) to make agreements with other states and with the United States government, or its agencies, and to accept funds from the federal government, or its agencies, or any other source for research studies, investigation, planning and other purposes related to the duties of the department; and any funds so received shall be deposited in the state treasury and shall be credited to a special revenue fund which is hereby created and shall be known as the `economic development fund' or used in accordance with or direction of the contributing federal agencies; and expenditures from such fund may be made for any purpose in keeping with the responsibilities, functions and authority of the department; and warrants on such fund shall be drawn in the same manner as required of other state agencies upon vouchers signed by the secretary. . . ."
The department's attorney reasons that this statute allows the agency "to accept funds from . . . any other source for . . . other purposes related to the duties of the department, . . ." which include the statutory duty to allocate the state ceiling for the issuance of qualified private activity bonds. In the opinion of agency counsel, this language is broad enough to allow the secretary to either charge an application fee or assess a fee "based on a number of percentage points for issuance of the private activity bonds."
We disagree with this interpretation of K.S.A. 1995 Supp. 74-5005(o). At the outset, we note that statutory interpretation is a question of law. State ex rel. Stephan v. Kansas Racing Comm'n, 246 Kan. 708, 719
(1990). While the legal interpretation of a statute by the administrative agency charged with enforcing the statute is entitled to deference when the scope and limitations of the agency's powers must be determined in judicial proceedings, id., the responsibility of the attorney general's office to issue opinions to the legislature on questions of law is independent of any judicial proceeding. See K.S.A.75-704.
In construing a statute, the words and phrases must be interpreted according to their context, with words in common usage given their natural and ordinary meaning. Kansas Racing Comm'n, 246 Kan. at 719. A statute should be construed to advance the sense and meaning fairly deducible from the context. Mahone v. Mahone, 213 Kan. 346, 350 (1973). With respect to tax statutes, the Kansas Supreme Court has held that if there is a question whether the legislature intended to levy a tax, the burden rests on the state agency to sustain its authority, and the rule of strict construction operates against the tax collector and in favor of the taxpayer. See Grauer v. Department of Revenue, 193 Kan. 605, 610
(1964). We think this rule applies to the imposition of fees by state administrative agencies as well as it does to the levying of taxes. The rule of strict construction simply means that ordinary words are to be given their ordinary meaning, and the statute should not be read to add that which is not readily found within it or to read out what as a matter of ordinary English language is included in it. Director of Taxation v.Kansas Krude Oil Reclaiming Co., 236 Kan. 450, 455 (1984).
Applying these rules of statutory construction, we think it is clear that paragraph (o) of K.S.A. 1995 Supp. 74-5005 was simply intended to allow the department to accept funds under contractual arrangements or grant agreements with outside funding sources such as the federal government, other states, or private economic development entities. Similar authority has been conferred by statute for a number of major state agencies. See, e.g., K.S.A. 65-103a (department of health and environment); K.S.A. 72-127, 72-7518 (state board of education); K.S.A.74-550 (department of agriculture); K.S.A. 75-5023 (department of transportation); K.S.A. 1995 Supp. 75-5733 (department of human resources); K.S.A. 75-5908(d), (e) (department on aging); K.S.A. 1995 Supp. 76-12a08 (social and rehabilitation services).
Statutory authority to receive and expend funds from federal agencies or other outside funding sources is clearly distinguishable from the authority to assess and collect fees in exchange for providing services that state law specifically requires the department of commerce and housing to perform. When the legislature has intended to authorize state agencies to assess and collect fees to finance all or part of their operating expenses, it has had no difficulty doing so in clear and explicit language. For example, the banking commissioner is expressly authorized by K.S.A. 1995 Supp. 9-1703 to assess and collect examination fees to cover the expense of conducting bank examinations, and to make an annual assessment to banks, savings and loan institutions and trust companies for the expenses of administering the laws governing those institutions. The securities commissioner is explicitly empowered to adopt rules and regulations to set an examination fee to be paid by persons who are subject to examination to cover the costs to the commissioner of performing the examination. K.S.A. 17-1270(d). The secretary of state is specifically authorized by K.S.A. 75-409 and 75-437
to charge fees to cover the costs of providing copies of information maintained by the secretary of state's office. The state treasurer is expressly authorized by K.S.A. 10-108(b) to fix, charge, and collect fees for registration and certification of municipal bonds. Similarly, K.S.A. 10-503 requires the state treasurer to collect a commission for receiving and disbursing bond funds. In addition, K.S.A. 10-625(a) authorizes the treasurer to negotiate fees with a bond issuer for services rendered as the designated authenticating trustee, transfer agent, registrar, or other agent. We could cite numerous additional examples of state agencies that have been expressly authorized by the legislature to impose fees for the services they are statutorily authorized or required to perform.
We have found no such authority in the statutes, either express or implied, for the department of commerce and housing to impose fees on governmental issuers seeking an allocation of the state ceiling in order to issue qualified private activity bonds. We note that K.S.A. 1995 Supp. 74-5005(m) authorizes the department to assist cities and counties through the establishment of industrial development corporations, and when deemed appropriate the department may contract with and make a service charge to the local governmental entity for providing these services. In addition, K.S.A. 1995 Supp. 74-5005(n) authorizes the department to provide assistance to private enterprise for certain purposes on request, and make a reasonable service charge for the services rendered. Thus, the legislature has specifically authorized the department to assess service fees and charges in particular circumstances. Had the legislature intended to authorize the department to impose application fees and ongoing annual fees on government issuers of qualified private activity bonds, it easily could have included such express authority in K.S.A. 1995 Supp. 74-5005 or in the private activity bond allocation act itself.
The department of commerce and housing has also supplied us with the results of a survey of 22 other states concerning the procedures they employ for allocating the state ceiling for the issuance of private activity bonds. The fact that several other states impose fees associated with the allocation of the state ceiling in those states may be persuasive in support of an argument that the Kansas legislature should authorize the imposition of similar fees. However, whether or not as a matter of policy such fees should be assessed to issuers of private activity bonds in this state is a decision that properly rests with the legislature, not the administrative agency charged with the responsibility of administering the act.
While we have not exhaustively researched the authorizing statutes of the surveyed states that impose such fees, we have determined that several of those states have enacted legislation specifically authorizing the assessment of application, closing, or service fees associated with qualified private activity bond issuances. See Ark. Code Ann. § 15-5-609 (Michie 1994) (authorizing assessment of filing fee); Colo. Rev. Stat. Ann. § 24-32-1707(6) (West 1988) (authorizing application fee); Ind. Code Ann. § 4-4-11.5-30 (Burns 1990) (authorizing nonrefundable fee for filing notice of intent); Wash. Rev. Code Ann. § 39.86.170 (West 1991) (authorizing establishment of fee schedule by regulation to support bond allocation activities, in amounts that reflect costs incurred by the agency for such activities).
In other states, the legislature has delegated to a state officer or agency the authority to establish procedures for processing applications for allocation of the state ceiling. E.g., Iowa Code Ann. § 7C.12 (West 1995) (governor's designee to promulgate necessary and expedient rules to administer act); Mo. Ann. Stat. § 108.510 (Vernon Supp. 1996) (director of department of economic development or designee may promulgate rules or regulations for considering applications for allocations); Neb. Rev. Stat. § 10-1001 (Michie 1995) (governor, by executive order, may establish method for allocating state ceiling and may delegate administrative authority for same).
In contrast, the Kansas private activity bond allocation act does not authorize the secretary of commerce and housing to charge fees of any kind. Nor does it authorize the secretary to adopt rules and regulations governing the procedures associated with the allocation of private activity bond authority. Rather, the legislature has specified, in the act itself, the detailed procedures to be followed in allocating the bond authority, and those very specific procedures do not include authorization to charge fees to offset the costs of administering the act. Nor do we find any authority in the department's general statutes for the establishment of fees associated with these particular statutory responsibilities.
The secretary of commerce and housing has the statutory duty to review the private activity bond allocation act from time to time and make recommendations to the governor and the legislature. K.S.A. 74-5062. If as a matter of public policy the legislature deems it appropriate to assess fees to state and local governmental entities that elect to issue private activity bonds, either the act itself or K.S.A. 1995 Supp. 74-5005
may be amended accordingly to expressly authorize the imposition of fees to reimburse the agency for the operating costs of administering the private activity bond allocation act. In the alternative, the department could seek the addition of a proviso to its appropriations bill to authorize the assessment of such fees. Absent such legislative authority, however, the department of commerce may not lawfully assess or collect fees from applicants for an allocation of the state ceiling for qualified private activity bonds, and may not assess annual fees as a percentage of the outstanding principal balance upon issuance of private activity bonds subject to the state ceiling.
Based upon our resolution of your first question, we need not address your second question concerning restrictions applicable to the deposit and expenditure of fee revenues. We note, however, that unless the legislature provides otherwise, all moneys lawfully credited to the state treasury are to be deposited in the state general fund, K.S.A. 75-3036, and expenditures would be subject to legislative appropriation.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 J. Lyn Entrikin Goering Assistant Attorney General
CJS:JLM:JLEG:jm